UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**

00 FEB 11 PM 4:09

U.S. DISTRICT COURT
N.D. OF ALABAMA

ERNEST RANDY JUDD,         )

                               )

    Petitioner,           )

                               )

vs.                    ) Civil Action No. CV-97-S-2735-NE

                               )

JOE HOPPER, Commissioner    )
of the Alabama Department   )
of Corrections, ARNOLD HOLT, )
Warden of Bullock County    )
Correctional Facility, and   )
BILL PRYOR, Attorney General )
for the State of Alabama,    )

                               )

    Respondents.         )

**ENTERED**

FEB 1 1 2000

## MEMORANDUM OPINION

This action is before the court on respondents' objections to the Magistrate's report, recommending that petitioner's application for writ of habeas corpus be granted. Upon consideration of the report and recommendation, briefs, evidentiary submissions, and pleadings, this court finds that respondents' objections are due to be sustained.

## I. BACKGROUND

Petitioner Ernest Randy Judd was indicted by the Grand Jury of Etowah County, Alabama, for rape in the first degree,[1] sodomy in the first degree,[2] and sexual abuse in the first degree[3] on June 11,

---

[1] See Ala. Code § 13A-6-61(a)(3).

[2] See id. § 13A-6-63(a)(3).

[3] See id. § 13A-6-66(a)(3).

1993.  Jamie Darline Judd, petitioner's adopted daughter, was the
alleged victim of those crimes.  She was fifteen years old on the
date of Judd's trial.

Judge Roy S. Moore of the Circuit Court of Etowah County
presided over the trial.  A jury was selected and seated on June
21, 1994, but discharged to return on Monday, June 27, 1994, for
the commencement of trial.[4]

On the morning trial was to begin, the parties first met with
Judge Moore in his chambers to argue evidentiary motions *in limine*,
prior to making opening statements.  Those present included the
State's prosecutor, Gary Lee Phillips, defendant Ernest Randy Judd,
John and Roy McCord, Judd's attorneys, Judge Moore, and his
official court reporter.[5]  In order to resolve the dispute over
certain aspects of the testimony to be elicited by the State from
its medical expert, Dr. Hilmon Holley, the physician testified in
chambers.[6]  At the conclusion of that examination, the doctor was
excused and the attorneys continued their arguments to Judge Moore
over Dr. Holley's anticipated trial testimony and other evidentiary
controversies.[7]  Eventually, Judge Moore asked, "Are ya'll ready?,"

---

[4] *See* Transcript of trial proceedings in state court ["T.R."], at 4-10.

[5] *See id.* at 11-22.

[6] *See id.* at 22-35.

[7] *See id.* at 35-59.

2

and, upon receiving an affirmative response, he announced, "Let's

go."[8]    That was the juncture at which events central to the

resolution of this proceeding occurred.

As everyone began to move toward the door leading from Judge

Moore's chambers into open court, the State's prosecutor, in the

most off-handed, "Oh. By the way, Judge ..." manner, detonated the

procedural bomb that reverberates still.

> My recollection is that we had taken up another
> matter, not this matter in particular, in chambers.    I
> recall John and Roy McCord being present and the judge
> and that other matter, we had basically finished with it
> in chambers prior to the trial starting, and as we were
> about to go out, I — my recollection is I turned and
> made the motion then that because of the graphic nature
> of the testimony that this child was about to have to
> give, because of how young she was, because of, you know,
> basically she had been victimized her entire life, and I
> just couldn't see victimizing her any more in the trial
> process than needed, just had to happen, and because of
> the fears that she had expressed to testify at all, much
> less in front of the defendant, the defendant's family
> and any other person that may wander in and out of the
> courtroom, that the court allow — exclude the audience
> portion of — not the defendant, not his attorney,
> certainly not the jury, but just the audience during her
> testimony. [9]

That motion and the arguments upon it were not transcribed.

Apparently, the court reporter either was in the process of moving

his equipment from Judge Moore's chambers or already had walked

---

[8] *Id.* at 59.

[9] Transcript of proceedings before Magistrate Judge (Doc. No. 16), at 15-16 (emphasis supplied).

3

into the courtroom at the time the motion was made.[10]

At the end of opening statements, Judge Moore granted the

State's motion to close the courtroom during the testimony of the

victim. The defense objected.

> THE COURT:    Okay.    Ladies and gentlemen, upon
> motion of the State of Alabama, which I have granted, the
> courtroom will be cleared during the testimony of the
> minor child. Ya'll may leave now.

> MR. ROY MCCORD:        Judge,  may  we approach the
> bench?

> THE COURT:    Sure.

> MR. ROY MCCORD:        Judge, we object to my client's
> constitutional rights being violated. He's entitled,
> under the U.S. and Alabama Constitutions, to have a free
> and open courtroom in this case. The Court has closed
> that courtroom and we believe my client's rights have
> been violated in that aspect. Number two, by announcing
> in front of the Jury, we are clearing the courtroom due
> to the minor child, we put undue emphasis on her
> testimony. We believe that that is highly prejudicial to
> the case and we would ask for a mistrial at this point in
> time. We believe the jurors have been prejudiced by that
> statement made in front of them. Thirdly, the State of
> Alabama gets up, says treat her testimony just like
> anybody else's, suddenly turns around and wants the
> courtroom cleared. They're getting their cake and eating
> it, too, and we object on those grounds, also.

> THE COURT:    Due to the nature of the case and I
> don't see any prejudice to the Defendant, at this time I
> will deny your motion.

> MR. ROY MCCORD:        We except.[11]

---

[10] *See id.* at 23.

[11] T.R. at 61-62.

4

After this exchange, the only persons present during the victim's

testimony were Judge Moore, defendant Ernest Randy Judd, Judd's

attorneys, the State's attorneys, the jury, and official court

reporter. Judge Moore reopened the courtroom to the public at the

conclusion of the victim's testimony.

The jury found Judd guilty of two counts of sodomy in the

first degree and three counts of sexual abuse in the first degree.

Judge Moore sentenced Judd to two concurrent thirty year terms for

the sodomy convictions and three five year terms for the sexual

abuse convictions. One of the three sexual abuse sentences ran

consecutive to the sodomy sentences, and the remainder were

concurrent. At this point, Judd's trial lawyers withdrew their

representation, and were replaced by present counsel.

Judd's motion for a new trial was denied initially and upon

reconsideration. Judd appealed his conviction to the Alabama Court

of Criminal Appeals. He argued, among other things,[12] that the

trial court had violated his right to a public trial by closing the

---

[12] Judd also argued the following in his brief to the Alabama Court of
Criminal Appeals: (1) "The State failed to prove the Appellant's age, a material
element of the offenses charged"; (2) "The trial court erred by excluding medical
records generated by Dr. Frantz"; (3) "The trial court erred by limiting the
Appellant's ability to cross-examine his ex-wife regarding their divorce
agreement"; (4) "The trial court erred by refusing to allow the Appellant to
review DHR Records"; and (5) "The trial court erred by refusing to allow the
Appellant to explain his actions." Judd's brief to the Alabama Court of Criminal
Appeals, at ii, listed as Exhibit "B" to respondents' answer.

5

courtroom.     The  Court  of  Criminal  Appeals  affirmed  Judd's

conviction on August 18, 1995, in an unpublished memorandum.    That

court said this with regard to Judd's public trial claim:

> Judd argues that the trial court erred in clearing
> the courtroom during the victim's testimony. He contends
> that § 12-21-202, Code of Ala. (1975) (stating that the
> trial court may, in its discretion, exclude all people
> not necessary to the trial from the courtroom during the
> testimony of the alleged victim in a rape case), is
> constitutionally void, because this statute establishes
> an exception to the constitutional right to a public
> trial.    On  the  authority  of  Globe  Newspaper  Co.  v.
> Superior Court of Norfolk County, 102 S.Ct. 2613, 457
> U.S. 596, 73 L.Ed.2d 248 (1982), we hold that the trial
> court  did  not  abuse  its  discretion  by  clearing  the
> courtroom during the victim's testimony. [13]

The Court of Criminal Appeals denied Judd's request for rehearing

on September 29, 1995.

Judd then filed a petition for writ of *certiorari* with the

Alabama Supreme Court, which was granted.[14]    That Court also

affirmed Judd's conviction.    Four Justices[15] devoted most of the

_____

[13] *Ernest Randy Judd v. State*, CR-93-2063, at 1 (Ala. Crim. App. Aug. 18,
1995) (unpublished memorandum), listed as Exhibit "E" to respondents' answer.

[14] Issues raised by Judd in his *certiorari* petition included: (1) "Whether
the trial court violated the petitioner's right to a public trial"; (2) "Whether
the trial court erred by excluding the prosecutrix's medical records"; (3)
"Whether the trial court erred by limiting the petitioner's cross-examination of
his ex-wife"; and (4) "Whether the trial court erred by denying the petitioner
access to, and copies of, the prosecutrix's Department of Human Resources'
records." Judd's petition for writ of *certiorari* to the Alabama Supreme Court,
at 5-8, listed as Exhibit "H" to respondents' answer.

[15] Chief Justice Hooper and Justices Maddox, Kennedy, and See joined in the
Alabama Supreme Court's *per curiam*, plurality opinion.    Justices Shores and
Houston concurred in the result.

6

discussion in the Court's plurality opinion to issues relating to Judd's alleged denial of his right to a public trial. That opinion contains three preliminary observations couched in the form of holdings: first, with respect to the Alabama legislature's authority under the state constitution to adopt Alabama Code § 12-21-202;[16] second, regarding the consistency of the United States Supreme Court's decision in *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), with Article I, § 6 of the Alabama Constitution of 1901;[17] and third, relating to the degree of discretion afforded a state trial judge when closing a courtroom during certain criminal proceedings.[18]

Without question, those observations were intended to serve as authoritative guidance for the trial judges and lower appellate

---

Houston concurred in the result.

[16] "[W]e hold that the Legislature nevertheless had the constitutional authority under its grant of power from the people to adopt § 12-21-202, and that the repeal of [Article VI,] § 169 [of the Alabama Constitution of 1901] does not limit the power of the legislature to exclude persons from the courtroom in cases of rape or assault with intent to ravish." *Ex parte Judd*, 694 So. 2d 1294, 1297 (Ala. 1997).

[17] "We further hold that the interpretation of the Supreme Court of the United States in *Waller v. Georgia* is not inconsistent with the provisions of Article I, § 6, of the Alabama Constitution of 1901, and we adopt the *Waller v. Georgia* test for determining when a courtroom, in cases of rape or assault with intent to ravish, can be closed without violating a defendant's constitutional right to a public trial." *Id.*

[18] "We hold, therefore, that a trial court has discretion under the provisions of § 12-21-202, in the proper circumstances, as here, to limit access to the courtroom if there is a showing of a substantial need to exclude some spectators." *Id.*

7

courts of the state.  As a strict point of law, however, those

pronouncements were *obiter dicta*.  The Alabama Supreme Court's

point of decision is contained in the last paragraph of the

plurality opinion.  In departing from general, forward-looking

principles and focusing on Judd's specific appeal, the plurality

held that a procedural defect prohibited review of his substantive

claims:

> Judd failed to preserve for the record the
> proceedings on the motion to close the courtroom, the
> considerations that led to the closure of the courtroom,
> who was cleared from the courtroom, or whether the
> courtroom remained closed after the victim's testimony.
> The burden is on the appellant to bring the record before
> an appellate court.  *Montgomery v. State*, 504 So. 2d 370,
> 372 (Ala. Crim. App. 1987).  Because Judd failed to have
> the relevant facts and proceedings included in the
> record, we cannot consider whether Judd's constitutional
> rights were violated when the courtroom was closed in his
> case.

*Ex parte Judd*, 694 So. 2d 1294, 1297 (Ala. 1997).  Justice Almon

dissented.  *Id.* at 1301 (Almon, J., dissenting) ("The circuit judge

stated on the record that he had granted the State's motion to

close the courtroom, and the defendant made a clear, specific, and

pertinent objection on the record.").

In sum, the Alabama Supreme Court ultimately disposed of

Judd's substantive claims on a procedural basis — his failure to

8

properly preserve a record for review on appeal.[19]

---

[19] The Alabama Supreme Court essentially adopted the arguments set forth
by the State in its reply brief to that court:

> The Petitioner's allegations (which incidentally are by new counsel
> who was not present at trial) that the motion was unrecorded, that
> there was no statement of reasons for the State's motion or for the
> Court's ruling, and that there was no hearing on the State's motion
> to determine the necessity of the Court's action, to determine if
> other alternatives were available, to determine if the Court
> "narrowly tailored" its closure order, or to allow interested
> parties to object must be disregarded by this Court since they are
> mere allegations that are themselves without support in the record.
> This Court is bound by the record and cannot consider allegations
> which are not disclosed or supported by the record.
>
>      An appellate court may not presume a fact not shown by the
> record and make it a ground for reversal. The appellant bears the
> burden of bringing the record before an appellate court. On appeal,
> the actions of the trial judge are presumptively correct in the
> absence of an affirmative showing to the contrary. Moreover, where
> the relevant facts and proceedings are not included in the record on
> appeal, an appellate court has nothing to review.
>
>      The references in the record on appeal to the Petitioner's
> public trial complaints begin with the trial judge's announcement to
> the audience in the courtroom that he had previously granted a
> motion by the State to clear the courtroom during the testimony of
> the minor child.  It was the Petitioner's obligation as the
> appellant to include the proceedings that had occurred on the
> State's motion in the record on appeal.  The record does not
> indicate whether these proceedings were unrecorded or merely not
> transcribed for inclusion in the record on appeal. Even if these
> proceedings were not recorded, Rules 10(d), (e) and (g), A.R.App.P.,
> provide procedures under which Judd should and could have
> supplemented the record on appeal.

State of Alabama's reply brief on writ of certiorari to the Alabama Supreme
Court, at 13-14 (citations omitted), listed as Exhibit "I" to respondent's answer
(Doc. No. 3). The state supreme court implicitly rejected the following argument
by Judd:

> On appeal, the petitioner requested the complete record of all
> proceedings in this matter, including all trial proceedings, the
> organization of the jury, and all arguments of counsel. In light of
> that request, it is apparent that the shortcomings pointed out by
> the petitioner do exist and the record's failure to refer to those
> shortcomings is evidence that the necessary hearings, statements of
> grounds, and rulings never occurred. The State's argument that this

9

## II. DISCUSSION

### A.    Introduction

Judd initially applied for a writ of habeas corpus in the

United States District Court for the Middle District of Alabama

pursuant to 28 U.S.C. § 2254(a).[20]  He argued that the trial court

had denied his Sixth Amendment right to a public trial[21] by failing

to follow the procedures articulated by the United States Supreme

Court in *Waller*, regarding closure of the courtroom in a criminal

proceeding, and, that the trial court denied him the constitutional

right to conduct discovery and prepare a defense.[22]

---

Court should presume the existence of such hearings, arguments, and
statements is irresponsible, and carries the concept of waiver far
beyond its proper scope.

This Court has been provided with a record that is more than
adequate to address the issues on appeal.  The petitioner took the
necessary step to bring a complete and sufficient record to this
Court, and the State's argument to the contrary are [sic] without
merit.

Judd's reply brief on writ of *certiorari* to the Alabama Supreme Court, at 6,
listed as Exhibit "J" to respondent's answer.

[20] That statute provides:

The Supreme Court, a Justice thereof, a circuit judge, or a
district court shall entertain an application for a writ of habeas
corpus in behalf of a person in custody pursuant to the judgment of
a State court only on the ground that he is in custody in violation
of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

[21] "In all criminal prosecutions, the accused shall enjoy the right to a
speedy and public trial ...."  U.S. Const. amend. VI.   The Sixth Amendment
applies to the states through the due process clause of the Fourteenth Amendment.
*See In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948).

[22] *See* Petition for the writ of habeas corpus ¶ 4 (Doc. No. 1).

10

United States District Judge Ira DeMent transferred Judd's

petition to the Northern District of Alabama on October 9, 1997.

This court requested a report and recommendation regarding Judd's

petition.     Following  an  evidentiary  hearing,  the  Magistrate

concluded  that  the  trial  court  had  failed  to  follow  the

requirements of *Waller* when closing the courtroom.

> [T]he  failure  of  the  trial  court  to  perform  an
> inquiry  on  the  record,  to  state  its  finding  of  an
> "overriding  interest"  justifying  closure,  and  to  find
> this  action  to  be  no  broader  than  necessary  to  protect
> that  interest,  as  required  under  *Waller*,  is  not  capable
> of  after-the-fact  analysis  to  determine  whether  there  is
> prejudice  to  petitioner.     Such  prejudice  is  presumed
> under  the  law.  ...  Given  that  the  error  occurred  during
> the  actual  trial  of  the  case,  the  only  remedy  for  this
> error  is  the  granting  of  a  new  trial.    Therefore,  it  is
> **RECOMMENDED** that  petitioner's  application  for  a  writ  of
> habeas  corpus  be  **GRANTED**. [23]

With  respect  to  respondents'  claim  that  Judd  was  procedurally

barred  from  pursuing  a  writ  of  habeas  corpus  in  this  court,  the

Magistrate  remarked  in  a  footnote  that  "[i]t  is  clear  that

petitioner  challenged  the  closure  on  constitutional  grounds,  both

at  trial  and  on  appeal.    The  Alabama  Supreme  Court's  refusal  to

consider  the  issue,  on  erroneous  grounds,  does  not  preclude  this

court  from  reaching  the  merits  of  the  claim."[24]    Respondents  filed

---

[23] Doc. No. 19, at 9-10 (emphasis in original).

[24] *Id.* at 5 n.2.

11

objections on June 14, 1999.  They argue not only that the
Magistrate erred in not deeming Judd's application procedurally
barred, but also that he found incorrectly on the merits of his
*Waller* claim.

## B.    The Doctrine of Procedural Default

This court finds the Magistrate's discussion of the merits of
Judd's *Waller* claim premature, and possibly not warranted at all,
because the doctrine of procedural default looms.  *See Jones v.
White*, 992 F.2d 1548, 1566 (11th Cir. 1993) (noting that a district
court should consider issue of procedural default before addressing
merits of a habeas claim).    That doctrine rests in part on
considerations of comity and deference to state courts. *See, e.g.,*
Erwin Chemerinsky, *Federal Jurisdiction* § 15.4.2, at 800 (2d ed.
1994).[25]    It presumptively[26] operates to bar federal review of a

_____

[25] In *Bailey v. Nagle*, 172 F.3d 1299 (11th Cir. 1999), Judge Carnes
specially concurred to emphasize the differences between the doctrines of
procedural default, discussed throughout this opinion, and failure to exhaust
state remedies, which is not discussed here.   *See id.* at 1306-07 ("This is a
procedural bar case, not an exhaustion of remedies case.").  The latter doctrine,
which respondents contend is also applicable, occurs when a petitioner attempts
to argue a federal constitutional claim in federal court without presenting it
originally to the state courts.   *See* 28 U.S.C. § 2254(b), (c).   In *Picard v.
Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), the Supreme Court held
that a habeas petitioner must first present the "substance" of a federal
constitutional claim to the state courts in order to satisfy the exhaustion
requirement.  *See id.* at 278, 92 S.Ct. at 513 ("[W]e do not imply that respondent
could have raised the equal protection claim only by citing 'book and verse on
the federal constitution.'") (citation omitted).   The Court noted the policy
considerations behind such a holding:

   The exhaustion-of-state-remedies doctrine, now codified in the

12

habeas petitioner's constitutional claims where the last state
court denying relief grounds its decision on failure to comply with
an independent and adequate state rule.

    In *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d
308 (1989), the Supreme Court applied the independent and adequate
state ground doctrine to habeas review cases.  *See id.* at 263, 109
S.Ct. at 1043 (following *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct.
2497, 53 L.Ed.2d 594 (1977)).  The Court summarized the evolution
of that doctrine in *Harris*:

> federal habeas statute, reflects a policy of federal-state comity,
> "an accommodation of our federal system designed to give the State
> an initial 'opportunity to pass upon and correct' alleged violations
> of its prisoners' federal rights."  We have consistently adhered to
> this federal policy, for "it would be unseemly in our dual system of
> government for a federal district court to upset a state court
> conviction without an opportunity to the state courts to correct a
> constitutional violation."  It follows, of course, that once the
> federal claim has been fairly presented to the state courts, the
> exhaustion requirement is satisfied.

*Id.* at 275, 92 S.Ct. at 512 (footnotes and citations omitted).  Supreme Court
decisions following *Picard* have attempted to delineate situations where the
"substance" of a federal constitutional claim has been presented to the state
courts, thereby making federal review proper.  *See Anderson v. Harless*, 459 U.S.
4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (*per curiam*) ("It is not enough
that all the facts necessary to support the federal claim were before the state
courts ... or that a somewhat similar state-law claim was made."); *Duncan v.
Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) ("If
state courts are to be given the opportunity to correct alleged violations of
prisoners' federal rights, they must surely be alerted to the fact that the
prisoners are asserting claims under the United States Constitution.").

    This court declines to address the exhaustion issue at this time, although
it notes that Judd's trial attorneys claimed federal constitutional violations
at the time Judge Moore granted the prosecution's motion to close the courtroom
during the testimony of the victim.  *See supra* pages 3-4.

    [26]  *See infra* Section II.C.

This Court long has held that it will not consider
an issue of federal law on direct review from a judgment
of a state court if that judgment rests on a state-law
ground that is both "independent" of the merits of the
federal claim and an "adequate" basis for the court's
decision.    Although this doctrine originated in the
context   of   state-court   judgments   for   which   the
alternative   state   and   federal   grounds   were   both
"substantive" in nature, the doctrine "has been applied
routinely to state decisions forfeiting federal claims
for violation of state procedural rules."

The question whether a state court's reference to
state law constitutes an adequate and independent state
ground for its judgment may be rendered difficult by
ambiguity in the state court's opinion. In *Michigan v.
Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201
(1983), this Court laid down a rule to avoid the
difficulties associated with such ambiguity. Under *Long*,
if "it fairly appears that the state court rested its
decision primarily on federal law," this Court may reach
the federal question on review unless the state court's
opinion contains a "'plain statement' that [its] decision
rests upon adequate and independent state ground."

*Harris*, 489 U.S. at 260-61, 109 S.Ct. at 1042 (citations and

footnotes omitted).  The *Harris* court extended the above rationale

to habeas claims brought in federal court:

Faced with a common problem, we adopt a common solution:
a procedural default does not bar consideration of a
federal claim on either direct or habeas review unless
the last state court rendering a judgment in the case
"'clearly and expressly'" states that its judgment rests
on a state procedural bar.

*Id.* at 263, 109 S.Ct. at 1043. *See also Coleman v. Thompson*, 501

U.S. 722, 751, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) ("When

14

a federal habeas court hears [a procedurally-defaulted] claim, it

undercuts the State's ability to enforce its procedural rules

. . . .").

    In *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990), the

Eleventh Circuit established a three-part analysis for federal

district courts to follow in determining whether petitions for writ

of habeas corpus fall victim to the doctrine of procedural default:

>     A state court's rejection of a federal
> constitutional claim on procedural grounds will only bar
> consideration of that claim on federal habeas if the
> state court's ruling rests on independent and adequate
> state grounds. A state court finding of waiver or
> procedural bar constitutes an independent and adequate
> state ground if certain conditions are fulfilled. First,
> under [*Harris*,] the last state court rendering a judgment
> in the case must fulfill the "plain statement rule" of
> [*Long*] and "clearly and expressly" state that it is
> relying on waiver as a ground for rejecting the
> petitioner's claim. Second, the procedural rule relied
> on by the state court must serve as an independent state
> law ground for denying relief, and may not be intertwined
> with an interpretation of federal law. Finally, the
> state's application of procedural bar must be adequate.
> That is, it must not be applied in an arbitrary or
> unprecedented fashion, such that it thwarts federal court
> review of those who, "in justified reliance upon prior
> decisions, seek vindication in state courts of their
> federal constitutional rights." Instead, a state court's
> procedural rule must be faithfully and regularly applied,
> and must not be manifestly unfair in its treatment of a
> petitioner's federal constitutional claim.

*Id.* at 1516-17 (citations omitted) (emphasis supplied).

    The *Card* test ensures that federal district courts

15

sufficiently consider *Harris*' points of emphasis: whether the last
state court rendering judgment clearly and expressly relied on a
state procedural bar; whether that bar was applied independent of
federal law considerations; and whether that bar was adequate for
rendering judgment. *See also Bolender v. Singletary*, 16 F.3d 1547,
1556 n.10 (11th Cir. 1994) ("The procedural default doctrine
requires federal courts to show deference for state procedural
rules."); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994)
("However, as here, where a state court has ruled in the
alternative, addressing both the independent state procedural
ground and the merits of the federal claim, the federal court
should apply the state procedural bar and decline to reach the
merits of the claim.").

     Accordingly, this court must apply the *Card* three-part test to
determine whether the Alabama Supreme Court's disposition of Judd's
appeal precludes review of petitioner's claims by this court.

     The Alabama Supreme Court's specific holding as to the
propriety of Judd's appeal meets the first two requirements of
*Card*.  First, that Court "clearly and expressly" stated that it
relied upon a procedural ground in refusing to consider Judd's
substantive claims: He "failed to have the relevant facts and

16

proceedings included in the record." *Ex parte Judd*, 694 So. 2d at 1301 (noting that burden is on appellant to preserve record). Second, the state procedural ground stood independent from the Alabama Supreme Court's interpretation of federal law, <u>with respect to the consideration of Judd's individual claims</u>. The Alabama Supreme Court undoubtedly capitalized on Judd's appeal as an opportunity to analyze the cohesion between the United States Constitution, the Alabama Constitution, and Alabama statutory law on the issue of courtroom closure in criminal proceedings. Its affirmance of the underlying conviction, however, rested entirely on Judd's procedural misstep. That ultimate conclusion in no way incorporated, or was intertwined with, federal law. *See generally* Erwin Chemerinsky, *Federal Jurisdiction* § 10.5.3, at 630-32 (cataloging situations where reliance on state law will not be deemed independent of federal law).

Application of the doctrine of procedural default in this case, therefore, turns on whether the procedural rule referenced by the Alabama Supreme Court in rejecting Judd's claims was adequate. As a preliminary matter, this court explores the authority relied upon by the Alabama Supreme Court in deeming "failure to preserve the record" a procedural bar to analysis of Judd's substantive

17

claims.

Alabama Rule of Appellate Procedure 10(d) provides the foundation for the Alabama Supreme Court's holding.

> **(d) Statement of the Evidence or Proceedings When No Report Was Made or When a Transcript is Unavailable.** If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. If the appellant prepares such a statement, the appellant shall serve it on the appellee within 28 days (4 weeks) after filing the notice of appeal; the appellee, within 14 days (2 weeks) after service, may serve on the appellant objections or proposed amendments to the statement. If the appellee serves no objection or proposed amendments, then, within 21 days (3 weeks) after the statement was served on the appellee, the appellant shall file the statement with the trial court for approval. If the appellee serves on the appellant any objections or proposed amendments, then, within 7 days (1 week) after service, the appellant shall file the statement and any objections or proposed amendments with the trial court for settlement and approval. Within 21 days (3 weeks) after the filing, the trial court shall rule, settling any questions regarding the objections and proposed amendments, and issuing an approved statement of the evidence or proceedings. The statement, either as approved by the court or as issued by the court after its ruling, shall be filed with the clerk of the trial court, who shall include it in the record on appeal.

Ala. R. App. P. 10(d).[27]

The Alabama Court of Criminal Appeals discussed Rule 10(d) in

---

[27] Alabama Rules of Appellate Procedure 10(e) (Agreed Statement as the Record on Appeal) and 10(g) (Supplementing or Correcting the Record—Criminal) also provide avenues for the inclusion of issues in the record that were not transcribed by a court reporter.

18

the context of an appellant's argument that a new trial was

warranted, because a transcript of the initial trial was not made,

in *White v. State*, 403 So. 2d 287 (Ala. Crim. App. 1980):

> This Court is bound by the record. The record here
> does not show that the defendant was denied a
> transcript[,] only that trial counsel "apparently" waived
> the presence of a court reporter during trial.
>
> Defendant's appellate counsel did not attempt to
> create a record of the proceedings under Rule 10(d)
> A.R.A.P. providing for a statement of the evidence or
> proceedings when no report was made or when the
> transcript is unavailable. ... While there have been
> implications, there has been no showing that trial
> counsel would refuse to aid in the "preparation of a
> statement of the evidence or proceedings from the best
> available means source" pursuant to Rule 10(d) A.R.A.P.
> The aid of the trial judge or the district attorney was
> not sought by appellate counsel in an attempt to comply
> with Rule 10(d).

*Id.* at 288.

The Alabama Court of Criminal Appeals relied upon *White* in

*Welch v. State*, 455 So. 2d 299 (Ala. Crim. App. 1984):

> An appellant "bears the burden of bringing the record
> before an appellate court. He and his counsel have the
> duty of checking the record before submitting the appeal.
> It is their duty to file a correct record." *Harris v.
> State*, 420 So. 2d 812, 816 (Ala. Cr. App. 1982)
> (citations omitted). This is not the situation where
> there was no court reporter present. *White v. State*, 403
> So. 2d 287 (Ala. Cr. App.), *cert. denied, Ex parte White*,
> 403 So. 2d 292 (Ala. 1981).

*Id.* at 300.

19

In turn, that court relied upon *Welch* in *Montgomery v. State*, 504 So. 2d 370 (Ala. Crim. App. 1987), for the proposition that "it is the appellant's responsibility to provide a complete record on appeal." *Id*. at 372. The Alabama Supreme Court, as discussed *supra*, cited *Montgomery* for the notion that the appellant carries the burden of furnishing a complete record. *Ex parte Judd*, 694 So. 2d at 1297. That Court implicitly found that Judd's record was incomplete on issues such as "the proceedings on the motion to close the courtroom, the considerations that led to closure of the courtroom, who was cleared from the courtroom, [and] whether the courtroom remained closed after the victim's testimony." *Id*.

Finally, in *P.M.M. v. State*, CR-98-1839, 1999 WL 1267793 (Ala. Crim. App. 1999), the Alabama Court of Criminal Appeals applied the analysis of the Alabama Supreme Court in *Ex parte Judd* to the appellant's claim that his constitutional right to a public trial was violated:

> In this case, the <u>proceedings on the motion to close the courtroom</u> and the trial court's reasoning that the nature of the case and the ages of the children required the closure of the courtroom <u>were, in fact, contained in the record on appeal</u>. Additionally, the record indicates that the courtroom remained closed to P.M.M.'s and the victims' friends and relatives from the beginning of trial until the closing arguments. <u>Thus, the [sic] P.M.M. satisfied his burden of providing this Court with an adequate record</u>. *See Ex parte Judd*, 694 So. 2d at

20

1297, citing *Montgomery v. State*, 504 So. 2d 370, 372
(Ala. Cr. App. 1987).

*Id.* at *1.

In sum, the preceding case law indicates that an Alabama
appellate court may only consider what is strictly made part of the
record. When an appellant disagrees with a trial court's ruling,
it is his or her burden to ensure that the record on appeal
contains all material necessary for an appellate court to
effectively consider the alleged error. In typical cases, a court
reporter preserves *verbatim* the proceedings occurring before a
trial court that form the basis of appeal. If a court reporter is
not present, however, Alabama Rule of Appellate Procedure 10(d)
provides an appellant a method to effectively "re-create" those
trial court proceedings forming the basis for appeal.

This court must consider whether the Alabama Supreme Court
fairly applied the above procedural rule in the context of Judd's
appeal. *See Card*, 911 F.2d at 1516-17. Provided the Alabama
Supreme Court did not apply the procedural rule in an arbitrary or
unprecedented fashion, the doctrine of procedural default applies
to Judd's petition for writ of habeas corpus in this court. *See
Bailey v. Nagle*, 172 F.3d 1299, 1304 (11th Cir. 1999) ("We are
satisfied that the Alabama courts denied the 1993 Rule 32 Petition

21

on the adequate and independent state procedural ground of
successiveness.").

Upon review of the record, this court finds that the Alabama
Supreme Court did not apply the procedural bar in an arbitrary or
unprecedented fashion. The record only furnished that Court with
the trial court's ruling on the motion to close the courtroom and
Judd's general objections. *See supra* pages 3-4. Because the
circumstances leading to, and arguments advanced for, closure were
not preserved by the appellant, the Alabama Supreme Court had no
evidentiary basis for application of the general principles
enunciated in the initial pages of the plurality opinion. *See
supra* notes 12-14. Had Judd captured all events relating to the
propriety of courtroom closure pursuant to Alabama Rule of
Appellate Procedure 10(d), on the other hand, the Alabama Supreme
Court certainly could have, and undoubtedly would have, reached the
merits of his claim. This court affords considerable discretion to
the opinion advanced by a plurality of the Alabama Supreme Court
that appellant failed to preserve a complete record. That Court's
interest in enforcing the procedural rules of the State of Alabama
is unparalleled: It is the ultimate arbiter of those rules.
Accordingly, the doctrine of procedural default applies here.

22

## C.    Cause and Prejudice: Excuse from Procedural Default

As noted earlier, the doctrine of procedural default
presumptively operates to bar federal courts from hearing a
petitioner's substantive claims.    Despite the existence of
procedural default, a federal court still may entertain a petition
for writ of habeas corpus if certain showings are made by the
petitioner:

> We now make it explicit: In all cases in which a
> state prisoner has defaulted his federal claims in state
> court pursuant to an independent and adequate state
> procedural rule, federal habeas review of the claims is
> barred unless the prisoner can demonstrate cause for the
> default and actual prejudice as a result of the alleged
> violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.    To establish a
"fundamental miscarriage of justice," a petitioner must make "a
colorable showing of actual innocence."    *Bailey*, 172 F.3d at 1306
(citing *Schlup v. Delo*, 513 U.S. 298, 324-27, 115 S.Ct. 851, 865-
67, 130 L.Ed.2d 808 (1995)).    Judd has failed to do that.
Accordingly, this court turns to the alternative basis for excuse
from procedural default, cause and prejudice.

In *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d
397 (1986), the Supreme Court articulated the requirements for

23

showing cause under the cause and prejudice test.   The *Coleman*

court summarized the relevant statements made by the *Murray* court:

> We explained clearly [in *Murray*] that "cause" under the
> cause and prejudice test must be something external to
> the petitioner, something that cannot fairly be
> attributed to him: "[W]e think that the existence of
> cause for a procedural default must ordinarily turn on
> whether the prisoner can show that some objective factor
> external to the defense impeded counsel's efforts to
> comply with the State's procedural rule."   477 U.S., at
> 488, 106 S.Ct., at 2645.   For example, "a showing that
> the factual or legal basis for a claim was not reasonably
> available to counsel, ... or that 'some interference by
> officials' ... made compliance impracticable, would
> constitute cause under this standard."   *Ibid.*   *See also*
> *id.*, at 492, 106 S.Ct., at 2647-2648 ("[C]ause for a
> procedural default on appeal ordinarily requires a
> showing of some external impediment preventing counsel
> from constructing or raising the claim").

*Coleman*, 501 U.S. at 753, 111 S.Ct. at 2566.   *See also Richardson*

*v. Thigpen*, 883 F.2d 895, 898 (11th Cir. 1989) ("[Petitioner]

argues that the state misapplied its own procedural default rules;

this does not constitute cause ....");   Erwin Chemerinsky, *Federal*

*Jurisdiction* § 15.5.2, at 823-25 (2d ed. 1994) (cataloging cases

and noting difficulty in showing cause for a procedural default).

In *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71

L.Ed.2d 816 (1982), the Supreme Court noted that, in order to show

prejudice, a petitioner "must shoulder the burden of showing, not

merely that the error at his trial created a *possibility* of

24

prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Id.* at 170, 102 S.Ct. at 1596 (emphasis in original). Put another way, "a demonstration of prejudice likely will require a showing that the alleged constitutional violation affected the outcome of the trial or the appeal — that the results probably would have been different but for the violation of federal law." Erwin Chemerinsky, *Federal Jurisdiction* § 15.5.2, at 830 (2d ed. 1994) (noting that elements of cause and prejudice are often not distinct).

The parties have not briefed the issue of whether petitioner can make the requisite showing of cause and prejudice to avoid the doctrine of procedural default. In accordance with the order entered contemporaneously herewith, therefore, the parties are directed to do so. This court will only proceed to the merits of Judd's constitutional claims upon a sufficient showing of cause and prejudice.

DONE this 11th day of February, 2000.

United States District Judge

25